WO                    IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

THERESA BROOKE, a married woman          )
dealing with her sole and separate claim, )
                                         )
                        Plaintiff,        )
                                         )
        vs.                               )
                                         )
A-VENTURES, LLC, a Colorado limited      )
liability company, d/b/a www.a-lodge.com, )
                                         )    No. 2:17-cv-2868-HRH
                        Defendant.        )
_____ )

O R D E R

Motion for Default Judgment

Plaintiff moves for default judgment.[1]  This motion is opposed.[2]  Oral argument was

requested but is not deemed necessary.

Background

Plaintiff Theresa Brooke is "a disabled woman confined to a wheelchair" who requires

an ADA-accessible room when she travels.[3]  Defendant A-Ventures, LLC owns/operates the

_____

[1]Docket No. 16.

[2]Docket No. 17.

[3]Verified Complaint at 2-3, ¶¶ 4, 9-10, Docket No. 1.

-1-

Boulder Adventure Lodge in Boulder, Colorado.[4]  Defendant maintains a website for the hotel at www.a-lodge com.[5]

Plaintiff alleges that she went to defendant's website for the purpose of booking a room but was unable to book an ADA-accessible room for her selected dates as well as for "a few different dates farther out."[6]  Plaintiff thus alleges that defendant has violated 28 C.F.R. § 36.302(e)(1)(i), which requires that

> [a] public accommodation that owns ... or operates a place of lodging shall, with respect to reservations made by any means, including by telephone, in-person, or through a third party ... [m]odify its policies, practices, or procedures to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms[.]

On August 24, 2017, plaintiff commenced this action in which she asserts a single cause of action under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181-12189.  Plaintiff expressly alleges that defendant violated Title III of the ADA because defendant was not complying with 28 C.F.R. § 36.302(e)(1)(i).[7]  Although defendant believes that plaintiff has also alleged that its website "did not identify and describe the accessible features of the lodge in enough detail to reasonably permit Mrs. Brooke to assess independ-

---

[4]Id. at 2, ¶ 2.

[5]Id.

[6]Id. at 4, ¶ 14.

[7]Id. at 5, ¶¶ 23-24.

ently whether A-Ventures met her accessibility needs[,]"[8] nowhere in plaintiff's complaint does she make any such allegations.  Plaintiff's claim is based only on her inability to book an ADA-accessible room on defendant's website.  Her claim is not based on allegations that defendant had failed to "[i]dentify and describe the accessible features" in its guest rooms "in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs[.]"  28 C.F.R. § 36.302(e)(1)(ii).  In other words, plaintiff's claim is based solely on 28 C.F.R. § 36.302(e)(1)(i) and whether or not defendant has complied with 28 C.F.R. § 36.302(e)(1)(ii) is not at issue here.

In her complaint, plaintiff seeks a declaration that defendant violated Title III of the ADA because its website did not comply with 28 C.F.R. § 36.302(e)(1)(i), injunctive relief ordering defendant to modify its website to allow for the reservation of ADA-accessible rooms, closure of defendant's website until defendant has complied with the ADA, attorney's fees, costs, and whatever other relief the court deems just and appropriate.

On September 20, 2017, plaintiff applied for entry of default.[9]  On September 21, 2017, the clerk of court entered default against defendant.[10]

Plaintiff now moves for entry of default judgment against defendant.

---

[8]Defendant's Response to Plaintiff's Motion for Default Judgment at 1-2, Docket No. 17.

[9]Docket No. 9.

[10]Docket No. 10.

<u>Discussion</u>

"Federal Rule of Civil Procedure 55(b)(2) permits a court, following default by a defendant, to enter default judgment in a case." <u>Craigslist, Inc. v. Naturemarket, Inc.</u>, 694 F. Supp. 2d 1039, 1051 (N.D. Cal. 2010). "When considering whether to enter a default judgment, a court has 'an affirmative duty to look into its jurisdiction over both the subject matter and the parties.'" <u>Golden Scorpio Corp. v. Steel Horse Saloon I</u>, Case No. CV–08–1781–PHX–GMS, 2009 WL 976598, at *3 (D. Ariz. April 9, 2009) (quoting <u>In re Tuli</u>, 172 F.3d 707, 712 (9th Cir. 1999)).

First, defendant seems to suggest that plaintiff does not have standing to bring her Title III ADA claim. "Standing is an essential element of a federal court's subject matter jurisdiction." <u>Byler v. Deluxe Corp.</u>, 222 F. Supp. 3d 885, 893 (S.D. Cal. 2016). "To establish standing under the ADA, plaintiff[] must demonstrate that [she has] suffered an injury in fact, that the injury is traceable to the challenged action of the [d]efendant and that the injury can be redressed by a favorable decision." <u>Hubbard v. Rite Aid Corp.</u>, 433 F. Supp. 2d 1150, 1162 (S.D. Cal. 2006).

Defendant argues that plaintiff has suffered no injury in fact because she could have never stayed at defendant's hotel. In her complaint, plaintiff alleges that she "cannot lodge at a hotel or inn without the commonly-acceptable features of an ADA-accessible room such as a roll-in shower, grab bars surrounding the toilet, shower transfer chairs, wider entry-ways to

-4-

accommodate [p]laintiff's wheelchair, and other commonly-accepted ADA features."[11] However, defendant's hotel does not have roll-in showers nor is it required to do so under the ADA. Hotels with fewer than 50 rooms are not required to have roll-in showers in any of their ADA-accessible rooms.[12] Defendant's hotel has 29 rooms.[13]

The fact that defendant's hotel is not required to provide roll-in showers does not mean that plaintiff has not alleged an injury in fact. Plaintiff did not allege that she must have a roll-in shower in order to stay at a hotel. Rather, she alleged that a roll-in shower was <u>one</u> of the features commonly found in an ADA-accessible room and that she must reserve an ADA-accessible room. Here, the essence of plaintiff's claim is that she suffered in injury in fact because she was unable to reserve an ADA-accessible room on defendant's website. Plaintiff has adequately alleged that she has standing to pursue a Title III ADA claim for declaratory and injunctive relief.

Defendant next argues that this court no longer has subject matter jurisdiction because this case is moot. "'A case becomes moot—and therefore no longer a Case or Controversy for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" <u>Rosebrock v. Mathis</u>, 745 F.3d 963, 971 (9th Cir.

---

[11]Verified Complaint at 3, ¶ 10, Docket No. 1.

[12]Exhibit K at 1, Defendant's Response to Plaintiff's Motion for Default Judgment, Docket No. 17.

[13]Declaration of Asa Firestone at ¶ 3, Exhibit E, Defendant's Response to Plaintiff's Motion for Default Judgment, Docket No. 17.

2014) (quoting <u>Already, LLC v. Nike, Inc.</u>, 133 S. Ct. 721, 726 (2013)).  "Because a private plaintiff can sue only for injunctive relief (i.e., for removal of the barrier) under the ADA, a defendant's voluntary removal of alleged barriers prior to trial can have the effect of mooting a plaintiff's ADA claim." <u>Oliver v. Ralphs Grocery Co.</u>, 654 F.3d 903, 905 (9th Cir. 2011) (internal citations omitted).

Defendant argues that this case is moot because it is now fully compliant with 28 C.F.R. § 36.302(e)(1)(i).  In support of this argument, defendant offers screenshots from its website which show that a guest can now book an ADA Queen room on the website.[14]

However, "'[t]he voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed.'" <u>Rosebrock</u>, 745 F.3d at 971 (quoting <u>Knox v. Serv. Emps. Int'l Union, Local 1000</u>, 132 S. Ct. 2277, 2287 (2012)).  "But voluntary cessation can yield mootness if a 'stringent' standard is met: 'A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'"  <u>Id.</u> (quoting <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.</u>, 528 U.S. 167, 189 (2000)).  "The party asserting mootness bears a 'heavy burden' in meeting this standard."  <u>Id.</u> (quoting <u>Friends of the Earth</u>, 528 U.S. at 189).

---

[14]Exhibit A, Defendant's Response to Plaintiff's Motion for Default Judgment, Docket No. 17.

Defendant argues that it can meet this heavy burden.  Defendant contends that it has no intention of undoing the changes it has made to its website.  In support of this contention, defendant offers the declaration of Asa Firestone, the managing partner of defendant. Firestone avers that he can "state with absolute certainty that the updates made to A-Lodge's website are permanent – they will not be removed at any time.  I personally oversee the content of the website; substantive changes cannot be made without my approval."[15]   As further evidence that defendant will not fall out of compliance, Firestone avers that he "enacted a new company policy ... regarding the reservation process for accessible guest rooms."[16]   That policy provides that "A-Lodge will ensure that individuals with disabilities can make reservations for accessible guest rooms online, over the telephone or in person during the same hours as individuals who do not need accessible rooms."[17]

Firestone's declaration is not sufficient to show that defendant's violation of 28 C.F.R. § 36.302(e)(1)(i) will not happen again.  A change to a website is akin to a change in policy, which courts have found are not sufficient to meet the stringent standard for proving a case has been mooted by a defendant's voluntary conduct if the policy "could be easily abandoned or altered in the future."  Bell v. City of Boise, 709 F.3d 890, 901 (9th Cir. 2013).  Defendant's

---

[15]Firestone Declaration at ¶ 9, Exhibit E, Defendant's Response to Plaintiff's Motion for Default Judgment, Docket No. 17.

[16]Id. at ¶ 8.

[17]Policy Regarding Resevations [sic] of Accessible Guestrooms, Exhibit C, Defendant's Response to Plaintiff's Motion for Default Judgment, Docket No. 17.

website could easily be abandoned or changed in the future,[18] as could its new internal policy.

This case is comparable to <u>Reyes v. Educational Credit Management Corporation</u>, —— F.R.D. ——, 2017 WL 4169720 (S.D. Cal. 2017).  There, Reyes brought a class action against ECMC "alleging violations of California's Invasion of Privacy Act...."  <u>Id.</u> at *1.  Reyes' claims arose out of ECMC's "internal policy of recording all inbound and outbound calls that reach a live customer service representative using" the Noble Phone System.  <u>Id.</u>  It was undisputed that the Noble Phone System was incorrectly programmed for thirteen phone lines during the relevant time period such that the caller was not notified that his phone call was being recorded.  <u>Id.</u>  ECMC argued that Reyes' claim for injunctive relief was moot because it had corrected the error in the programming and "adopted a written procedure to attempt to avoid this type of conduct in the future."  <u>Id.</u> at *13.  The court rejected ECMC's argument, explaining that

> [t]he correction of the error alone is unconvincing—it is not implausible that the settings on the Noble Phone System that led to this lawsuit could be again incorrectly programmed in [the] future.  For example, a software or hardware update could require the Noble Phone System's settings to be reconfigured, and the same mistake could be made, as it was made previously for thirteen separate phone lines.
>
> The same is true for ECMC's new written policy.  ... Committing [a] policy to writing may be an improvement, but this change does not demonstrate it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to

---

[18]<u>See</u> Expert Opinion of Thomas Leyba at 2-3 ¶¶ 11-12, 17-18, Exhibit 1, Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Default Judgment, Docket No. 20.

> recur.  The company similarly does not show this policy could not
> be easily abandoned or altered in the future.

Id. at *14 (internal citations omitted).

Similarly here, all defendant has done is change its website and adopt a new internal policy, both of which could easily be changed in the future.  Defendant has not met its heavy burden of showing that it is absolutely clear that its wrongful behavior could not reasonably be expected to recur.  This case is not moot.

Turning then to the merits of plaintiff's motion for default judgment, "[t]he district court's decision whether to enter a default judgment is a discretionary one." Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).  Factors the court considers

> in exercising discretion as to the entry of a default judgment
> include: (1) the possibility of prejudice to the plaintiff, (2) the
> merits of plaintiff's substantive claim, (3) the sufficiency of the
> complaint, (4) the sum of money at stake in the action; (5) the
> possibility of a dispute concerning material facts; (6) whether the
> default was due to excusable neglect, and (7) the strong policy
> underlying the Federal Rules of Civil Procedure favoring deci-
> sions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

Based upon the parties' arguments as to the Eitel factors and the procedural status of this case - defendant's default, the court finds:

1)      If a default judgment is not entered, plaintiff "will likely be without other recourse for recovery" because defendant has declined to respond to her complaint.  PepsiCo, Inc. v. California Security Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

-9-

2)      Plaintiff is disabled within the meaning of the ADA; defendant owns or operates a place of public accommodations; plaintiff was denied public accommodation by defendant because she was not able to book an ADA-accessible room in the same manner as a person could book a non-ADA-accessible room; and allowing plaintiff equal access would be readily achievable.

3)      The sum of money at stake here (plaintiff's request for $8,260 in fees and costs) is not unreasonable in relation to defendant's conduct.

4)      There is no possibility that there are any disputes of material fact because plaintiff's allegations must be accepted as true and because defendant appears to have conceded the ADA violation at issue here.

5)      There is no possibility of excusable neglect as defendant is aware of this lawsuit and the instant motion was sent to defendant.

6)      Defendant has substantially admitted the merit of plaintiff's Title III ADA claim by modifying its on-line reservation system in response to plaintiff's complaint.

All of the Eitel factors weigh in favor of entering a default judgment, but "[b]efore a court can enter default judgment against a defendant, the plaintiff must [also] satisfy the procedural requirements for default judgments set forth in Rules 54(c) and 55 of the Federal Rules of Civil Procedure[.]" Vogel v. Rite Aid Corp., 992 F. Supp. 2d 998, 1006 (C.D. Cal. 2014). "Rule 55(b)(2) requires service on the defaulting party if that party has appeared in the action." Id. at n.19. Here, defendant has been served with notice of plaintiff's motion for

default judgment. Rule 54(c) provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." To determine if plaintiff has satisfied Rule 54(c), the court considers the relief that she is now requesting.

First, plaintiff requests nominal damages in an amount to be determined by the court. Although plaintiff did not expressly request nominal damages in her complaint, she did request "whatever other relief the [c]ourt deems just, equitable, and appropriate."[19] "That is sufficient to permit the plaintiff to pursue nominal damages." Yniguez v. State, 975 F.2d 646, 647 n.1 (9th Cir. 1992). The question here is whether nominal damages are available in a Title III ADA case. The only remedy under Title III of the ADA is equitable relief; damages are not available. 42 U.S.C. § 2000a-3. However, in Bayer v. Neiman Marcus Group, Inc., 861 F.3d 853, 874 (9th Cir. 2017), the Ninth Circuit held that "§ 12203 [of the ADA[20]] authorizes courts to award nominal damages as equitable relief when complete justice requires." This is not a § 12203 case and the court declines to extend the holding of Bayer to a Title III ADA case.

But even if the court were inclined to extend the holding of Bayer, complete justice would not require an award of nominal damages in this case. In Bayer, the court found that complete justice required an award of nominal damages, in large part because

> Bayer waited more than six years after he filed the charge alleging Neiman Marcus interfered with his ADA rights to receive the right-to-sue letter he needed to initiate this suit from the EEOC,

---

[19]Verified Complaint at 7, Docket No. 1.

[20]Section 12203 is in Title IV of the ADA and is the anti-retaliation and coercion provision.

> including four years <u>after</u> the EEOC determined there was
> reasonable cause to believe Neiman Marcus had discriminated
> against him in violation of the ADA.

<u>Id.</u> at 874.  Here, all plaintiff did was file a cookie-cutter complaint against defendant, after which defendant promptly remedied the ADA violation at issue.  Under such circumstances, plaintiff would not be entitled to nominal damages.

Although plaintiff does not expressly address her request for declaratory relief in her briefing, plaintiff is entitled to a declaration that, at the time this lawsuit was filed, defendant was violating Title III of the ADA because its hotel reservations website did not afford disabled persons equal access to defendant's public accommodations.

Plaintiff also seeks injunctive relief.  Under the ADA, "injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities...."  42 U.S.C. § 12188(a)(2).  Although defendant represents that it has already complied with 28 C.F.R. § 36.302(e)(1)(i), plaintiff is entitled to an injunction directing defendant to ensure that it is, and that it remains, in compliance with 28 C.F.R. § 36.302(e)(1)(i).

Next, plaintiff seeks an award of attorney's fees.  "The attorney's fee provision of the ADA allows the court to award a prevailing private party 'a reasonable attorney's fee, including litigation expenses, and costs.'"  <u>Brown v. Lucky Stores, Inc.</u>, 246 F. 3d 1182, 1190 (9th Cir. 2001) (quoting 42 U.S.C. § 12205) (emphasis omitted)).  "[C]ourts generally apply the lodestar method to determine what constitutes a reasonable attorney fee[.]"  <u>Bravo v. City</u>

of Santa Maria, 810 F.3d 659, 665–66 (9th Cir. 2016).  "Under the lodestar method, the court

multiplies a reasonable number of hours by a reasonable hourly rate."  Stanger v. China

Electric Motor, Inc., 812 F.3d 734, 738 (9th Cir. 2016) (citation omitted).

As an initial matter, defendant argues that plaintiff's request for attorney's fees should

be denied in its entirety on the basis of a September 1, 2017 order in Advocates for Individuals

with Disabilities, LLC v. MidFirst Bank, Case No. CV 16-01969-PHX-NVW.[21]  There, the

plaintiffs had brought claims under the ADA and the Arizonians with Disabilities Act

("AZDA") based on allegations that "MidFirst failed to maintain various parking lot

specifications ... required by state and federal disability laws."[22]  The court noted that "the

discrepancies in parking signage and striping here were minor, even trivial" and that "MidFirst

immediately corrected them[.]"[23]

The court declines to apply MidFirst Bank to this case.  The MidFirst Bank court

primarily took issue with the plaintiffs' request for $5000 in attorney's fees because the ADA

violations could have been remedied with a demand letter or a phone call.  But Title III of the

ADA does not contemplate that the statute will be enforced via demand letters and phone calls.

Rather, it contains a private right of action.  42 U.S.C. § 12188(a).  Plaintiff was exercising her

---

[21]A copy of this decision is attached as Exhibit F to Defendant's Response to Plaintiff's Motion for Default Judgment, Docket No. 17.

[22]Exhibit F at 1-2, Defendant's Response to Plaintiff's Motion for Default Judgment, Docket No. 17.

[23]Id. at 2.

-13-

statutory right to file a lawsuit to enforce Title III and the fact that she did so does not mean that she is not entitled to any attorney's fees. Moreover, defendant's failure to comply with 28 C.F.R. § 36.302(e)(1)(i) was not trivial.

Defendant next argues that plaintiff's request for attorney's fees should be denied in its entirety because opposing counsel's conduct and unreasonable settlement demands prevented this case from settling at the outset. This argument focuses on a September 2017 phone call between plaintiff's counsel, Peter K. Strojnik, and Maury Birdwell, who serves as defendant's outside general counsel in Colorado. Mr. Strojnik accused Mr. Birdwell of being aggressive, sounding intoxicated, engaging in negative name-calling, and threatening him during the phone call.[24]  Mr. Birdwell accused Mr. Strojnik of yelling, using profanity, and generally being unprofessional during the phone call.[25]  An email exchange between the two on September 9, 2017 did nothing to remedy the situation.[26]

The fact that counsel for the parties have a poor relationship is not a sufficient reason to deny plaintiff's request for attorney's fees in its entirety. The question here is not whether counsel for either party behaved badly but rather whether the amount of attorney's fees plaintiff is requesting is reasonable.

---

[24]Declaration of Peter Strojnik [etc.] at 4, ¶ 10, which is appended to Motion for Default Judgment, Docket No. 16.

[25]Declaration of Maury Birdwell at ¶ 5, Exhibit G, Defendant's Response to Plaintiff's Motion for Default Judgment, Docket No. 17.

[26]Exhibit H, Defendant's Response to Plaintiff's Motion for Default Judgment, Docket No. 17.

Turning then to the lodestar calculation, "[g]enerally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." Camacho v. Bridgeport Financial, Inc., 523 F.3d 973, 979 (9th Cir. 2008). Counsel for plaintiff proposes an hourly rate of $650.00 based upon his skill, experience, and qualifications.[27] "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Id. at 980 (citation omitted). Plaintiff only offers the declaration of her attorney in support.

Defendant argues that $650 an hour is not a reasonable rate. In support of this argument, defendant offers the declaration of Lynda C. Shely, a legal ethics expert. Shely avers that "my opinion is that an hourly rate of $650 is unreasonable and not remotely within the range of average hourly rates charged in Arizona by a small/solo firm lawyer with only 11 years of civil litigation experience and no additional qualifications."[28] Shely avers that her opinion is "further supported by the State Bar of Arizona 2016 Economics of Law Practice in Arizona ... survey of hourly rates charged by Arizona lawyers."[29] This publication shows that

---

[27]Strojnik Declaration at 2-3, ¶ 6, which is appended to Motion for Default Judgment, Docket No. 16.

[28]Declaration of Lynda C. Shely at 4-5, ¶ E.2, Exhibit J, Defendant's Response to Plaintiff's Motion for Default Judgment, Docket No. 17.

[29]Id. at ¶ E.3.

the median hourly rate for a lawyer with eleven years of experience, such as plaintiff's attorney, is $279 and that the median hourly rate for lawyers representing plaintiffs in litigation matters is $299.[30]  This publication further shows that the median rate for lawyers in Maricopa County is $282.[31]  Shely also avers that she is a sole practitioner with 30 years of experience and her hourly rate is only $360 and that in her experience "[r]ates above $350/hour for lawyers with 10-14 years of experience are charged only by lawyers at large national firms, practicing in specialized areas of law."[32]

The court concludes that an hourly rate of $650 for a lawyer with eleven years of experience is unreasonable, but given counsel's experience with ADA matters, an hourly rate higher than the median rates discussed above is justified.  The court finds that an hourly rate of $350 is reasonable.

Counsel for plaintiff has devoted a total of twelve hours to this case.[33]  Plaintiff argues that this was reasonable.  Shely, however, avers that

> it is impossible to gauge whether twelve hours of claimed lawyer time .... is reasonable for generating [p]laintiff's boiler-plate complaint and attachments in this case because Strojnik did not include a statement breaking down the twelve hours to indicate ...

[30]State Bar of Arizona Economics of Law Practice in Arizona 65 (2016 ed.).

[31]Id. at 64.

[32]Shely Declaration at 4, ¶ E.3, Exhibit J, Defendant's Response to Plaintiff's Motion for Default Judgment, Docket No. 17.

[33]Strojnik Declaration at 5,  ¶ 13, which is appended to Motion for Default Judgment, Docket No. 16.

whether the time was for legal work or purely non-billable clerical tasks (such as copying and filing the complaint).[34]

Shely avers that "Strojnik failed to establish that twelve hours of lawyer (or paralegal) time would be a reasonable amount of time ... for what work was performed for this specific case."[35]

The twelve hours expended by plaintiff's counsel on this case, although minimal, was not be reasonable. For one thing, plaintiff's counsel avers that he spent 2.60 hours researching "mootness in the 9th Circuit" and "the issue of 'nominal damages' in ADA cases in the 9th Circuit...."[36] These are issues that have come up in other cases filed by Mr. Strojnik on behalf of Mrs. Brooke and should have required only minimal new research on Mr. Strojnik's part. It also should not have taken Mr. Strojnik 2.6 hours to research, draft, and file the instant motion, given that it is almost identical to at least one other such motion he recently filed in another case brought by Mrs. Brooke. The court concludes that a reasonable amount of time to have spent on this case was nine hours.

The lodestar amount in this case is $3,150.[37]

After the lodestar is calculated, "the district court then assesses whether it is necessary to adjust the presumptively reasonable lodestar figure on the basis of the <u>Kerr</u> factors that are

---

[34]Shely Declaration at 4, ¶ E.4, Exhibit J, Defendant's Response to Plaintiff's Motion for Default Judgment, Docket No. 17.

[35]<u>Id.</u>

[36]Strojnik Declaration at 5, ¶ 13, which is appended to Motion for Default Judgment, Docket No. 16.

[37]9 x 350 = 3,150.

not already subsumed in the initial lodestar calculation."  <u>Morales v. City of San Rafael</u>, 96

F.3d 359, 363–64 (9th Cir. 1996).  The <u>Kerr</u> factors are:

> (1) the time and labor required, (2) the novelty and difficulty of
> the questions involved, (3) the skill requisite to perform the legal
> service properly, (4) the preclusion of other employment by the
> attorney due to acceptance of the case, (5) the customary fee, (6)
> whether the fee is fixed or contingent, (7) time limitations
> imposed by the client or the circumstances, (8) the amount
> involved and the results obtained, (9) the experience, reputation,
> and ability of the attorneys, (10) the "undesirability" of the case,
> (11) the nature and length of the professional relationship with the
> client, and (12) awards in similar cases.

<u>Id.</u> at n.8.

Kerr factors 1, 2, 3, 8 and 9 are subsumed in the lodestar calculation.  Because these

types of ADA cases may be considered undesirable, a small upward adjustment is called for

here.  The court concludes that a reasonable amount of attorney's fees in this case is $3,600.

Finally, plaintiff seeks $460 in costs, which represents the filing fee and service of

process fee.[38]  Plaintiff is entitled to recover these costs.

Conclusion

Plaintiff's motion for default judgment[39] is granted.

The clerk of court shall enter judgment as follows.  The court declares that, at the time

this lawsuit was filed, defendant was in violation of the Americans with Disabilities Act

because its hotel reservations website did not afford disabled persons equal access to

---

[38]<u>See</u> Exhibit 1, Motion for Default Judgment, Docket No. 16.

[39]Docket No. 16.

defendant's public accommodation.  Defendant is enjoined as follows:  defendant is hereby enjoined to ensure that it is, and that it remains, in compliance with 28 C.F.R. § 36.302(e)(1)(i) such that ADA-accessible rooms may be reserved in the same manner as non-ADA-accessible rooms.

Judgment for the following sums is awarded:

(1)     Costs:  Four Hundred Sixty Dollars ($460.00); and

(3)      Attorney Fees:  Three Thousand Six Hundred Dollars ($3600.00)

for a total judgment of Four Thousand Sixty Dollars ($4060.00).

DATED at Anchorage, Alaska, this 21st day of November, 2017.

/s/ H. Russel Holland_____
United States District Judge